W. H. AVERY v. THE POLICE JURY OF IBERVILLE et al.

There is nothing repugnant to the Constitution in the provisions of the Acts of the Legislature of 1813 and 1814, confering certain powers on the Police Juries in regard to opening natural drains, &c.

The courts will presume that the power conferred on the Police Jury has been properly and judiciously executed by them, and it is for the party complaining to show that the making or opening of works was unnecessary or detrimental to such party.

The court did not err in excluding the opinion of the Civil Engineer as to whether the right fork of a bayou was a natural outlet, or caused by a crevasse, or some sudden eruption of nature. Whether it was caused by a crevasse or some sudden eruption of nature, it was not artificial.

APPEAL from the District Court of Iberville, *Robertson*, J.
*Geo. S. Lacey*, for plaintiff and appellant. *Thomas Gibbs Morgan* and *A. Talbott*, for defendant.

VOORHIES, J. This is a controversy in relation to the right of drainage, in which an injunction was obtained by the plaintiff. He alleges that an ordinance was passed by the Police Jury of the parish of Iberville, on the 23d of July, 1853, to establish a common drain through the point on the Mississippi, opposite the town of Plaquemine, called "Manchac Point"; that *Thomas Towles, Thomas S. Billings* and *Thomas C. Brown*, the other defendants, were appointed commissioners to carry the same into effect, with power to remove obstructions to the flow of waters in Bayou Paul or any of its branches, and to open all ancient natural drains; that said bayou is the natural drain of his plantation and the lands lying above it, but not of those of the extreme point, opposite the town of Plaquemine, unless accomplished by artificial works which would be greatly detrimental to the lands below; that in consequence of canals and drains having been made on lands above his estate, he caused one of the forks of Bayou Paul to be closed, as he had a right to do, and dug in lieu thereof a large canal to carry off the waters; and that he was ordered by said commissioners to open said fork, which he refused to do. He avers that said ordinance is illegal, the Police Jury having transcended the powers delegated to them; that if enforced, it will have the effect to throw rapidly all the waters from "Point Manchac" on his lands, so as to overflow and render the same worthless. He therefore prays, that said commissioners be restrained from exercising any of the powers thus conferred upon them by said ordinance, which may be declared illegal.

The answer avers that Bayou Paul, having its source at "Manchac Point," opposite the town of Plaquemine, passes over the lands of the various proprietors back and below, and empties itself into Spanish Lake; that if cleared of all obstructions, according to said ordinance, it would be sufficient to drain all the lands above and below, including the plaintiff's; that the plaintiff has illegally closed only one of the forks of said bayou on his land, so as to interrupt the natural flow of the water, to the great damage of all the proprietors, the drainage of whose lands being thereby prevented. They, therefore, pray that the injunction be dissolved; that the plaintiff be ordered to remove all obstructions by him placed in Bayou Paul, especially the dam erected by him across the right fork of said bayou.

The court below gave judgment in favor of the defendants, and the plaintiff appealed therefrom.

The Police Juries are empowered, under the legislative Acts of 1813 and 1814, "to cause to be opened in any town, suburb, or other place divided into town lots, or when a point of land on the Mississippi or other water course shall be divided among several proprietors, such ancient natural drains as have been obstructed by the owners of the adjacent lands; and to prescribe the mode to be observed in that respect; to cause any water course, which is not navigable, to be filled up, for the purpose of carrying the high ways over the same, provided that no injury be thereby occasioned to the neighboring inhabitants ; and whenever an application made by twelve inhabitants of a town, suburb, or other place divided into house lots, or when a point of land on the Mississippi, or other water course, shall be divided among several proprietors, it shall be found necessary to dig one or more draining ditches, the said jury shall have power to ordain that the said ditches be dug at the expense of the owners of the lots, and that the expense be borne by a contribution among the owners, to be levied in such manner as the jury shall describe, *saving to individuals or persons aggrieved, the right of complaining of the making or opening of such natural or artificial drainings, when unnecessary or hurtful to them.*"

In pursuance of the powers thus delegated to the Police Jury, the ordinance in question was passed, of which the following are two of its sections, the only ones which we consider necessary to be noticed, viz :

"1st. Be it ordained, That there shall be a cut-off canal or common drain, to conduct the waters from the swamps or head waters of the Bayou Paul in "Manchac Point," the said canal to commence at the upper swamp and crossing the lower swamp in a direct line, to terminate in the Bayou Paul at its head, in the field of *Messrs. Gourier* and *Anger*, or in the canal of the same. Said bayou or canal shall then be enlarged to a sufficient capacity to carry off the waters until it reaches the bridge at the cut-off road. Said bridge to be lengthened, and the bayou or canal widened and deepened sufficiently to carry the water. Thence the bayou shall be enlarged by cutting off the points when found necessary, and taking straight cuts when advantageous to do so, on account of the bends in the bayou, so far as the point where the line ditch of *J. N. Brown* enters the bayou—thence the bayou to be cleared and enlarged until it reaches a point where the bayou is of sufficient capacity to carry off the waters without such cutting or enlargement.

4th. Be it ordained, That said commissioners be and are fully empowered to remove all obstructions which may be found to prevent or retain the flow of the waters on the Bayou Paul or any of its branches, as well as to open all ancient and natural drains which may have heretofore existed and which may have been obstructed by dams, fences or other obstacles thrown in and across the same."

It is contended by the plaintiff that such power could not be delegated by the Legislature to the Police Jury. The power of the legislative department of the government is supreme within its sphere. The only restriction to such power is prescribed by the Constitution. We do not think there is anything in the provisions of the Acts in question, which can be considered repugnant either to the letter or spirit of the Constitution. 11 An. 370.

It is also urged, that the ordinance does not fall within the powers delegated to the Police Jury ; that it ordains to be drained not only a point, but a por- tion of a bend on the Mississippi upon the other portion, and thus " inundate a large portion of the immense estate of the plaintiff, condemning the same to perpetual stirility" ; for which no necessity is shown to exist, as required by the statute. Whether such necessity existed or not, it was a matter which belonged to the jurisdiction of the Police Jury, and we are bound to presume that it was properly and judiciously exercised by them. It was, therefore, for the plaintiff to show that the making or opening of the projected works was unnecessary or detrimental to him. This he has failed to show.

The other ground of illegality, that the ordinance expropriated the plaintiff and others without previous adequate indemnity, appears to us to be equally untenable.

Our attention has been drawn to several bills of exceptions in the record:

1. We do not think the Judge erred in sustaining the objection to the fol- lowing question propounded by the plaintiff to several witnesses on the stand, viz : "Would not the removal of the dam, in the prong in *Avery's* field, have the effect of causing incalculable injury to yourselves, by the inundation of your plantations, and overflowing of other large and valuable plantations lying below *Mr. Avery ?*"

The fact sought to be elicited from the witnesses, was neither pertinent nor material to the issue.

2. Neither was there any error in excluding the opinion of the Civil Engi- neer as to whether the right fork of the Bayou Paul was a natural outlet, or caused by a *crevasse,* or some sudden eruption of nature. Conceding it to have been caused by a *crevasse,* or some sudden erruption of nature, it was certainly not artificial.

3. The testimony of *William G. Waller* was sought to be excluded by the plaintiff, on the ground, that it tended to contradict the survey and report made by *Caldwell* as an officer of the court, which was inadmissible, especial- ly as the defendants themselves had sustained said report by his testimony, and on that point had made him their own witness. We think the objection was correctly overruled by the Judge. We have not been referred to any law authorizing the exclusion of such testimony.

On the merits, we think the necessity or expediency of the projected work is clearly shown, the principal object of which was to reclaim a large body of land containing about 5,000 acres. In attaining that end, the question arises, will it prove detrimental to the plaintiff ? If so, it is clear that he is entitled to relief.

Bayou Paul, it appears, has its source in a swamp. It runs eastward a dis- tance of eight miles and twenty chains, and empties itself into the " Great Basin," bordering on Spanish Lake. The lands above are drained in a lake and the swamp in which it has its source, and the waters of both flow into it. The fall from the surface of the water in the lake above to the bottom of the " Great Basin," is nearly twelve feet. *Caldwell,* one of the surveyors, testi- fies that if the improvements were made as directed by the ordinance, they would be adequate to the drainage of the lands above, but not of those below *James N. Brown* and *K. McGavock.* The cutting of the canals would, in his opinion, shorten the incline plane of drainage so as to throw suddenly below a

larger quantity of water than the bayou could contain and carry off. "This opinion, he says, is based on the hypothesis that no improvement will be made on the bayou below the lands of *McGarock*." Then, it may be inferred from this, that the execution of the work as directed by the ordinance, would avoid such a consequence. A careful examination of the evidence in connection with the map in the case, leads us to the conclusion that the plaintiff has failed to show sufficient grounds to entitle him to the relief which he seeks at our hands.

One of the means indicated by the ordinance for the accomplishment of the works in question, is, "to open all ancient natural drains which may have heretofore existed and which may have been obstructed by dams," &c. The right fork of the Bayou Paul, closed by the plaintiff's dam, is shown to have been "an ancient natural drain," more direct in its course to the "Great Basin," and equally, if not more, capacious than the other fork. It is no sufficient reason for the plaintiff to urge, that the erection of his dam was to prevent the overflow of his estate in consequence of canals which had been dug on the superior estates. His recourse was against those who had occasioned such overflow. The doctrine in the case of *Kilgore* v. *Grevemberg*, 10 An. 689, and the other cases cited, would then be applicable. But we think it is extremely doubtful whether such an effect would have been produced by the alleged canals. Even if it had, it appears to us that the closing of this drain could not have had the effect to avert such a consequence.

It is, therefore, ordered and decreed, that the judgment of the court below be affirmed, with costs.

---

### SAME CASE ON A RE-HEARING.

SPOFFORD, J. In refusing the re-hearing prayed for in this case, we remark that it will be the duty of the Police Jury to provide for the exit of the additional waters proposed to be drained through the right fork of Bayou Paul, in such a manner as not to overflow the lands of the plaintiff.

Their attempt to reclaim the swamp at Point Manchac, must not be allowed to bring the waters thence drained in a flood upon the plaintiff's lands. They must provide against injurious consequences to the plaintiff from their acts, or they will be liable in damages. The decision in this case cannot affect the right of the plaintiff to any legal remedies for injuries hereafter threatened or done to his property by the act or neglect of the Police Jury or others. If any expropriation of plaintiff's land becomes necessary, it must of course be effected according to law.

Re-hearing refused.